CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
FEB 0 1 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| RICHARD A. PLASTER,<br><br>                              *Plaintiff*,<br><br>v.<br><br>SHERIFF MIKE BROWN ET AL.,<br><br>                            *Defendants*. | CIVIL ACTION NO. 6:05-CV-00006<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter comes before the Court on Plaintiff's objections to the Report and Recommendation of Magistrate Urbanski recommending that the motions to dismiss of Defendants Mike Brown and Randy Krantz be granted. For the reasons stated below, the Court will adopt the Report and Recommendation, with some modification of its reasoning.

I. BACKGROUND

On March 15, 2005, Plaintiff Richard Plaster brought this 42 U.S.C. §1983 action alleging that he was arrested and prosecuted on felony charges because he exercised his Fifth and Sixth Amendment rights during the initial investigation of a complaint by his neighbor, John Ivory, that Plaster shot at him and his wife.[1] (Compl. ¶¶7, 11, 12). Plaintiff charges that the

---

[1] The body of Plaintiff's Complaint does not mention Mrs. Ivory, and states only that John Ivory contacted the police. Plaintiff's allegations are not inconsistent, however, with the "Affidavit for Arrest Warrant" attached as Exhibit A to the Complaint, which states that "John W. Ivory and his wife Patricia M. Ivory" reported being shot at by Plaintiff. (Compl. Exh. A).

Sheriff, two Deputy Sheriffs, and the Commonwealth's Attorney of Bedford County, Virginia, violated his Second, Fourth, and Fifth Amendment rights by arresting him in retaliation for exercising his constitutional rights.[2]

On March 31, 2005, Commonwealth's Attorney Randy Krantz filed a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss on Eleventh Amendment, absolute, and qualified immunity grounds. On April 1, 2005, Sheriff Mike Brown also filed a R. 12(b)(6) motion, citing the absence of any allegations in the Complaint that he personally took any actions that violated Plaintiff's rights.

By order of the Court and pursuant to 28 U.S.C. § 636(b)(1)(B), the motions were referred to the Honorable Michael F. Urbanski, United States Magistrate Judge, for proposed findings of fact and a recommended disposition. Judge Urbanski filed a Report and Recommendation on November 9, 2005, recommending that the Court grant both motions to dismiss.

Plaintiff, a *pro se* litigant, filed Objections to the Report and Recommendation on November 28, 2005. Plaintiff disputes Judge Urbanski's conclusion that the Eleventh Amendment protects Commonwealth Attorneys from being sued in their official capacity. Plaintiff also disagrees that Krantz's conduct—advising two Deputy Sheriffs who solicited his opinion that John Ivory's statement to the police created sufficient probable cause to justify seeking an arrest warrant from a magistrate—is protected by absolute immunity, and objects to Judge Urbanski's alternative finding that Krantz is entitled to good faith immunity.[3]

---

[2] Plaintiff's allegations are summarized more fully in Magistrate Urbanski's November 9, 2005 Report and Recommendation.

[3] In his written objections, Plaintiff did not dispute or even mention Magistrate Urbanski's conclusion that he pled insufficient facts to state a claim against Sheriff Brown. *See* P. Obj. to R&R. Finding the Magistrate's conclusions to be well-supported by the record and governing law, the Court adopts his recommendation to grant Sheriff Brown's motion to dismiss.

## II. DISCUSSION

### A. Claim against Randy Krantz acting in his official capacity

Plaintiff objects to Judge Urbanski's conclusion that Krantz is immune under the Eleventh Amendment to the extent that Plaintiff has sued Krantz in his official capacity as Commonwealth's Attorney. In finding Krantz immune, Judge Urbanski carefully and correctly applied the Fourth Circuit's four-part test for determining whether an employee constitutes an "arm of the state" for Eleventh Amendment purposes. *See Ram Ditta v. Maryland Nat'l Capital Park and Planning Comm.*, 822 F.2d 456, 457-58 (4th Cir. 1987).[4] Plaintiff, by contrast, misapplies *Ram Ditta* by focusing on two of its factors to the exclusion of the others. The Court will thus adopt the Magistrate's reasoning and conclusion and overrule Plaintiff's objection.

### B. Claim against Randy Krantz acting in his individual capacity

#### *i. Absolute immunity*

Plaintiff objects to Judge Urbanski's conclusion that Defendant Krantz enjoys absolute immunity for his conduct giving Deputy Sheriffs Goyne and Boswell his assessment of whether the Ivorys' complaints justified seeking an arrest warrant from a magistrate.

Plaintiff alleges that Krantz "knew or should have known" that the Ivorys' allegations were false—and therefore that probable cause to arrest him did not exist—and yet nonetheless advised the Deputies that the Ivorys' statements would be sufficient to establish probable cause.

---

[4] Judge Urbanski's opinion is supported by persuasive authority, although only in *dicta*. *See Blankenship v. Warren Co.*, 918 F. Supp. 970, 974 n.4 (W.D. Va. 1996) ("The Virginia Constitution creates five state officers which are charged with performing quintessential functions of state government: Commonwealth's Attorney, Treasurer, Commissioner of Revenue, Sheriff, and Clerk of the Court . . . [T]hese officers are . . . state actors and . . . are entitled to immunity pursuant to the Eleventh Amendment.").

3

(Compl. ¶¶ 9, 20, 21). Plaintiff alleges that the Deputies solicited Krantz's legal advice on the existence of probable cause; he does not allege that Krantz appeared before the magistrate, assisted in preparing the March 18, 2003 Affidavit for Arrest Warrant, or otherwise ordered the officers to seek a warrant from the magistrate.[5] (Compl. ¶¶ 9, 10, 12).

A prosecutor enjoys absolute immunity for conduct related to initiating and pursuing a criminal prosecution that is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). Absolute immunity may extend to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Id.* at 431, n. 33. A prosecutor is only protected by qualified immunity, however, for performance of "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings . . . ." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

The policy considerations supporting absolute immunity include (1) protecting the prosecutor from litigation that would divert energy and resources from his official duties and (2) freeing him to exercise independent judgment when "deciding which suits to bring and in conducting them in court." *Kalina v. Fletcher*, 522 U.S. 118, 125 (1997) (quoting *Imbler*, 424

---

[5] In paragraph 12 of his complaint, Plaintiff quotes Deputy Goyne as saying, "[T]he Commonwealth Attorney himself told us to do this [arrest Plaintiff]." In paragraph 23 of his complaint, Plaintiff states, "The Deputies admitted they didn't have probable cause for their actions on March 18, 2003 at 11:00 p.m. [seeking arrest and search warrants] but stated that Commonwealth Attorney Randy Krantz ordered them to take these actions." However, Plaintiff never adopts these assertions of the Deputies as his own allegations. He alleges only that Krantz gave the Deputies legal advice, not that he ordered them to do anything. If the Court did construe these statements as being incorporated into Plaintiff's allegations, they would tend to support a finding that Krantz's conduct related to the initiation of prosecution, and the conclusion that Krantz enjoys absolute immunity.

4

U.S. at 424). The first interest would be served by affording prosecutors blanket absolute immunity for all conduct in the scope of their employment, while the second "is applicable only when the official is performing functions that require the exercise of prosecutorial discretion." *Id. Imbler* and its progeny make clear that absolute immunity is only to be afforded when both policy interests are served. *See, e.g., Buckley*, 509 U.S. at 269 (noting that under the common-law's "functional approach" toward absolute immunity, it is the nature of the function performed by the prosecutor, not the actor's identity as a prosecutor, that justifies absolute immunity).

The difficulty of drawing the line between conduct "intimately associated with the judicial phase" and that of a merely administrative or investigative nature has generated a rich prosecutorial immunity jurisprudence. In *Burns v. Reed*, 500 U.S. 478 (1991), the Court held that a prosecutor was absolutely immune for his actions appearing before a judge and presenting evidence in support of an application for a search warrant, where the hearing occurred after Plaintiff's arrest but before she was charged. However, the Court found that the prosecutor enjoyed only qualified immunity for his conduct giving police advice on (1) the legality of an investigative technique and (2) the existence of probable cause to support the plaintiff's warrantless arrest. *Id.* at 482, 495. In making the latter finding, the Court emphasized that absolute immunity does not extend to every act by a prosecutor "in some way related to the ultimate decision whether to prosecute" but rather extends only to those acts "closely associated with the judicial process." *Id.* at 495.[6]

The Court disagrees with Judge Urbanski's finding that Krantz's conduct giving the

---

[6] The Court also emphasized that it would be "incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice." *Id.*

5

sheriffs advice about the existence of probable cause constituted the "initiation of prosecution." (R&R at 10). Plaintiff alleges only that the Deputies sought Krantz's advice, and then went to the magistrate. Nothing in his complaint indicates that Krantz appeared before or even accompanied them to the magistrate, or ordered them to apply for the warrant. Under *Imbler* and its progeny, to qualify for absolute immunity the prosecutor's conduct must relate to the initiation and pursuit of a criminal prosecution and implicate the prosecutor's independent judgment as to which cases to bring and how to conduct them through the judicial process. Construed in the most favorable light, nothing in Plaintiff's allegations indicates that at the time the Deputies sought his advice, Krantz was also deciding whether the machinery of the state would be used to prosecute Plaintiff.[7] At this time, Krantz had not yet had the opportunity to independently evaluate the merits of a case against Plaintiff. Thus, while this case is not on all fours with *Burns*, because the officers there sought advice regarding the propriety of a *warrantless* arrest, the logic of *Burns* supports the conclusion that Krantz is only entitled to qualified immunity for predicting the outcome of a probable cause hearing.[8]

### B. *Qualified immunity*

Judge Urbanski concluded that even if Krantz is not entitled to absolute immunity, the

---

[7] This case is thus distinguishable from *Springmen v. Williams*, 122 F.3d 211 (4th Cir. 1997), in which an Assistant State's Attorney ("ASA") reviewed and approved an application for a Statement of Charges and Summons ("Statement") prepared and ultimately filed by a police officer. Filing the Statement effectively initiated prosecution under the Maryland procedure, and the prosecutor's approval of it was therefore "conduct directly related to the decision to prosecute a case." *Id.* at 213.

[8] The Court agrees, and Plaintiff does not dispute, that Defendant Krantz enjoys absolute immunity with respect to other acts clearly within the scope of his prosecutorial duties and role as an advocate of the state. (R&R at 10, n. 4); *see Imbler*.

charges against him should be dismissed on grounds of qualified immunity because the facts and circumstances within Krantz's knowledge at the time the Deputies sought his advice were sufficient for him to reasonably conclude that probable cause to arrest Plaintiff existed. (R&R at 12-13). Judge Urbanski's conclusion rests on the assumption that Krantz credited the Ivorys' statements. *Id.* at 14.

Plaintiff alleges in his complaint that Krantz "knew or should have known" the falsity of John Ivory's complaint. (Compl. ¶¶ 20, 21, 26). The question thus arises whether this allegation is sufficient to overcome Krantz's qualified immunity defense. Krantz would have violated a clearly established constitutional right of Plaintiff and would not be entitled to qualified immunity if he had encouraged the Deputies to seek an arrest warrant while knowing they intended to use false statements in the warrant application.[9] However, the negligence-type formulation ("knew or should have known") used by Plaintiff does not make clear whether he is actually alleging, on information and belief, that Krantz *knew* the Ivorys' report was false at the time he advised the Deputies.[10] Such an allegation, if clearly made, would undermine a factual premise of Judge Urbanski's report: that Krantz credited the Ivorys' statements in good faith.

Aware of the Fourth Circuit's repeated admonishments that district courts be especially

---

[9] *Cf. Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005) (finding the existence of a clearly established constitutional right not to be deprived of liberty as result of fabrication of evidence by an investigating officer).

[10] Plaintiff is little clearer in his Objections to the R&R: "Certainly, a prosecutor's advice to the Deputies to use false statements as probable cause is plainly incompetent or he knowingly violated the law [sic] thus is not entitled to qualified immunity." [Obj. at 3]. Plaintiff does not make clear whether he is alleging that Krantz knew the Ivorys' statements were false—or was merely incompetent in failing to ascertain their falsity. Nowhere following the disjunctive "or he knowingly violated the law" does Plaintiff specify why he thinks Krantz knowingly violated the law.

7

solicitous of *pro se* civil rights litigants,[11] the Court granted Plaintiff a hearing on his objections of January 24, 2006. Plaintiff was probed on his assertion that Krantz "knew" the Ivorys' complaints were false the night the Deputies called him seeking his advice:

> **The Court:** I say, do you have to show that Mr. Krantz absolutely knew you were innocent?
> **Mr. Plaster:** You have to show that Mr. Krantz knew that there was no probable cause.
> **The Court:** All right. I mean, didn't your neighbor say you shot at him?
> **Mr. Plaster:** The neighbors —the one neighbor said that. The other two neighbors that saw the entire incident said I didn't shoot at him.
> **The Court:** Well, Mr. Krantz doesn't try the case. He —I mean, he's suggesting, I guess, that this case be tried in court, that the warrant be issued and that there be a trial.
> **Mr. Plaster:** My argument would be, Your Honor—the *Gates v. Illinois*, as you are very well aware of, is it is based on the totality of the facts and circumstances. I mean, anybody can make one allegation against anybody else in the United States. . . . Well, I got two neighbors saying it didn't happen . . . .
>
> . . .
> **The Court:** . . . How does [Krantz]—unless he was there himself—how does he know that person is lying?
> **Mr. Plaster:** Because —how does he know? The deputies had told him, Your Honor, that their—when you evaluate —the prosecutor has a responsibility to evaluate at least a little bit of the credibility . . . .

(1/26/06 Hearing Tr. pp. 9–10, 14).

This dialogue sheds light on the essential nature of Plaintiff's allegations: in his view, Krantz is not entitled to immunity because he should have done more to investigate the facts and to evaluate the credibility of the witnesses before advising the Deputies that the Ivorys' complaints justified seeking an arrest warrant. Plaintiff is entitled to criticize his elected officials, but he misapprehends the protection that qualified immunity affords in this context. Officials performing functions are shielded from liability if their conduct does not violate clearly

---

[11] *See, e.g., Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).

established statutory of constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Burns*, 500 U.S. at 495.

Told of reports of a very serious crime, and solicited to give a legal opinion, Krantz offered his view on the sufficiency of these reports to establish probable cause. He did not recommend or order the Deputies to make a warrantless arrest. Rather, he allegedly told them the reports justified going to a magistrate. Krantz was not required to conduct a full inquiry about the events in question before offering his view of the matter; after all, he knew a magistrate would vet the evidence further. His conduct was neither plainly incompetent, nor a knowing violation of the law. Plaintiff's allegations are not sufficient to overcome Krantz's qualified immunity defense.

### III. CONCLUSION

Although the Court agrees with Plaintiff that Krantz is not entitled to absolute immunity, none of Plaintiff's other objections have merit. Because Krantz is entitled to qualified immunity, the Court will adopt Magistrate Urbanski's recommendation to grant Krantz's motion to dismiss. The Court will also adopt the recommendation in favor of granting Sheriff Brown's motion to dismiss, as Plaintiff filed no objections thereto.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

ENTERED: *[signature]*
U.S. District Judge

Date: February 1, 2006